[No. 15508.    Department One.    January 19, 1920.]

## SEYMOUR SHOULTES et al., Respondents, v. C. H. QUAST et al., Appellants.[1]

DRAINS (13-1)—ESTABLISHMENT—COSTS AND EXPENSES.    Under Rem. Code, § 4226-10, authorizing a change of boundaries of a proposed drainage district and a revision of estimated costs, the county commissioners cannot charge the costs of engineer's expense which was not incurred in connection with the plans substantially as recommended or which were incurred in a plan which was a substantial abandonment of that originally planned and petitioned for; but the district finally formed may be charged with such part of the costs as was necessarily incurred in the preparation of the district finally adopted.

SAME (13-1)—COSTS—ATTORNEYS.    In the establishment of a drainage district it is proper to allow a reasonable attorney's fee for special attorneys employed whose services were beneficial to the district as finally created.

SAME (13-1)—COSTS—MODIFICATION OF PLAN.    Where in the establishment of a drainage district, two ditches were more feasible than one, as originally planned, it is proper to allow the cost of ditch number two.

MANDAMUS (90)—SCOPE OF RELIEF.    An application for a writ of mandate does not require the court to either grant or reject it in toto.

Cross-appeals from a judgment of the superior court for Snohomish county, Bell, J., entered March 29, 1919, upon findings favorable to the defendants, in mandamus proceedings to compel the striking of certain

[1] Reported in 187 Pac. 356.

costs incurred in establishing a drainage district. Modified.

*Thos. A. Stiger,* for appellants.

*Black & Black,* for respondents.

MACKINTOSH, J.—In February, 1916, there was filed with the board of county commissioners of Snohomish county, pursuant to ch. 176, Laws 1913, p. 611 (Rem. Code, § 4226-1 *et seq.*), the petition of Paulson and others asking for the formation of a drainage improvement district to consist of a main ditch about four miles in length with six laterals. The exact boundaries of the lands to come within that district were not given, but it was stated in the petition that the district was intended to benefit about 3,500 acres. The commissioners appointed a special engineer and attorney for the proposed district, and authorized the engineer to go over the lines of the proposed improvement and make a report in writing as to the feasibility of the project. This was done. In the report the engineer shortened the main ditch by about one mile and suggested the omission of certain laterals and recommended others be included, and, referring to the feasibility of the project, pointed out that an exact survey would be necessary before the topography of the land could be ascertained, and when this survey should have been made, other modifications might be required. The commissioners entered an order directing the engineer to make a further survey and prepare the necessary maps, etc., of the proposed district. The project was then designated ''Proposed Drainage District Number Five.'' The engineer proceeded, under the direction of the board, to make such further survey and rendered his estimate of the cost of the district. In this second report the engineer determined that a

large portion of the area which would have been drained by the plan recommended in the first report should not be drained, and in this second report provided for a district of about 2,800 acres, some of which had been included in the original petition and his first report, but about eight hundred acres of new area were included. A plan of the drainage system of the new district was then filed, which consisted of four independent ·ditches, the first of which was the same as that noticed in the first report except that no laterals were provided. This report also contained, among the estimated costs of the improvement, an item of $1,678.95 for engineering expense. Upon the filing of this report, the commissioners published notice of hearing as required by law, which hearing, after several continuances, was had and the board entered its findings, ordered a district of 1,759 acres, eliminated the 800 acres added by the engineer's· second report, and also eliminated the third and fourth ditches named in that report. The district, as finally determined, contained two parallel ditches to be constructed at the same locations where the special engineer had suggested in his second report as ditches one and two, but the sizes of the ditches were somewhat altered.

Some months thereafter the county engineer, pursuant to an order of the board of county commissioners, having made a survey, submitted a plan for ditch number one, which followed the same location proposed by the special engineer, but differed in length, width and depth. This plan was adopted ·for ditch number one and the district was constructed. The county engineer then determined upon the location of ditch number two and substituted for ditch number two, as proposed, two small ditches, one on each side of the county road, which were to be called ditch number

two. These ditches were shorter than number two, as proposed by the special engineer, and were shallower and, in their combined width, narrower than the ditch originally proposed.

The special engineer's work for the district then ceased, the work being taken over by the county engineer under ch. 130 of the Laws of 1917, p. 517, which was an amendment to the act under which the proceedings had theretofore been conducted. Thereafter appraisers apportioned the amount of costs and expenses on the lands according to the benefits derived, and filed their schedule according to law. The board of county commissioners then gave notice of hearing on the schedule. Prior to that hearing, the respondents applied to the superior court for an alternative writ of mandate. In their application they stated certain irregularities in the proceedings before the board of county commissioners, and alleged that the final order of the board was, in legal effect, a rejection of the original petition, and asked that the fees of the special engineer and the special attorney be disallowed, and that the board of county commissioners be ordered to strike the amount of such fees from the schedule.

The respondents claim that the present district of 1,800 acres should not bear the entire expense of the special survey affecting about 4,000 acres, for the reason that most of the improvements petitioned for originally, or as included in the reports of the special engineer, even if made according to the original petition and reports, would not have benefited the 1,800 acres of the district as created, and also that no portion of the ditches were actually dug according to the plans of the special engineer.

Upon the trial the court struck the special engineering expense, but refused to strike the special attor-

ney's fees and the cost of the two ditches substituted for ditch number two. Both sides have appealed.

Under § 10 of the act of 1913 (Laws 1913, p. 617; Rem. Code, § 4226-10), the board of county commissioners is empowered to change boundaries, to revise estimated costs, to make changes and modifications in engineer's reports, and to reject his work, if necessary, and have the work done by some one else, or to reject the whole proceeding. But this does not give the board the right to allow, as engineer's expense, such expenses as were not incurred in connection with the preparation of plans, specifications, and profiles substantially as recommended in his report, and the district cannot be charged with such expenses as were incurred in a plan which was the substantial abandonment of that originally designed or that favorably reported on, and the district cannot be charged with the expense of making plans, specifications, profiles and estimated costs on ditches situated in locations which were independent of the district as originally petitioned for and favorably reported on.

The district, however, cannot be relieved of such portion of cost as was necessarily incurred in the preparation of the district as it was finally adopted. The entire record is conclusive that the only question properly before the court, in so far as the special engineer's charges are concerned, is as to the apportionment of that expense. It would seem that the special engineer is not entitled to the entire sum of $1,678.95, but the services which he rendered were of value to the district, as finally adopted, in the sum of $900, and an order will be made that this amount be included in the cost of the district.

Passing to the consideration of the special attorney's costs, there is no claim that the amount, i. e., $750, is excessive or unreasonable, the services having extend-

ed over a period of more than two years, and there is no testimony showing that the services were not entirely beneficial to the district as finally created. The court was, therefore, correct in sustaining the allowance of this item by the commissioners.

As to the refusal to strike the item in regard to the cost of ditch number two, the testimony shows that the construction of two ditches was more feasible, economical and serviceable than to have constructed ditch number two according to the original plan. We do not feel called upon, under these circumstances, to interfere with the judgment of the trial court.

The judgment will be affirmed except as indicated in the foregoing in regard to the special engineer's costs. An application for a writ of mandate does not compel this court to either grant or reject it *in toto.* Such is the holding in *State ex rel. Brown v. McQuade,* 36 Wash. 579, 79 Pac. 207; *State ex rel. Barto v. Board of Drainage Com'rs,* 46 Wash. 474, 90 Pac. 660; *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707; *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479, 104 Pac. 797.

HOLCOMB, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.